Macomber, J.
The application to the court for the removal of Louis Tobias and Morris Green from the trusteeship of the last will of Henry Harris, purports to be made in behalf or with the consent of all parties interested in the estate. But it appears, by the affidavits of three of the petitioners, that certain persons, who were not parties to the proceedings by name, are infants whose assent to the removal of the trustees is given by their general guardians only. These are Henry S. Harris, Rosalie Harris, Latta B. Russak, Rita Hect, Sophia Hect and Jacob Henry Hect, who are under the ninth and tenth sections of the will, ultimately entitled to a large part of the principal of the trust, subject to the life interest of their parents, who are among the petitioners. The affidavit of the parent in each instance says that he is the general guardian of certain of the infants, naming them. I do not understand, however, from the appeal papers, that such an assertion in the affidavit means that any judge or court has appointed these persons such general guardians, but, on the contrary, that it is intended to allege nothing further than that such persons are by nature the guardians of their infant children. There were handed to the court on the argument documents from the proper clerk’s office which show that no appointment of a general guardian has been made and placed on file.
. Irrespective, however, of the letters of general guardianship, it was necessary to bring these infants as parties into this proceeding before an effective order could Ibe made of such gravity as the one from which this appeal has been taken. Being so deeply interested in the estate of their grandfather, "and the amount which should finally come to them being dependent largely upon the skill and ability with which the property is in the meantime managed, it became incumbent upon the court, before deciding so grave a matter to appoint for them a guardian ad litem, who, *151 being a disinterested person with no interests hostile to them, could properly, and without passion, bring before the court proper considerations to determine whether or not two of the four trustees should thus summarily be deprived of the important trust which the testator has reposed in them mainly for the benefit of these and other grandchildren. Sherman v. Burnham, 6 Barb., 404; Bear v. Am. Rap Tel. Co , 36 Hun, 400.
This consideration would necessarily lead to a reversal of the order, with directions to bring in such infants as -parties, but a careful consideration of the merits of the motion renders it unnecessary to protract longer these proceedings.
There exists no doubt but that this court has ample power to remove one or more trustees from the management of a trust estate and appoint others in their place. Nor is the exercise of this power necessarily dependent upon proof of actual misconduct or malfeasance, which has prejudiced or impaired the trust estate. If the court can see inharmonious relations have grown up between the several trustees, engendered by the one complained of, and can see that such inharmonious and unfriendly relations will, to a greater or less extent, be detrimental to the estate, an order may be made which shall, if possible, restore harmony between the trustees and, if necessary, remove the cause of disagreement. Quackenboss v. Southwick, 41 N. Y., 117.
But this power ought not to be exercised except in well defined cases; for it is at best an interference with the choice of instruments made by the testator for carrying out his intentions as expressed in the will; and these intentions and purposes are generally better capable of being executed by the person selected by the testator than by those named by the court, being chosen, as will be seen conspicuously in this case, with a lively sense of fitness for the particular trust.
The facts of each case must point to the proper conclusion therein; for very little aid can be had from the adjudged cases beyond affording valuable illustrations of the general rule.
It appears that Henry Harris, who had been a member of the firm of Harris & Russak, died on the twelfth day of June, 1819, in the city of New York, leaving a last will and testament which was afterwards duly admitted to probate, by which his partner, Benjamin Russak, and Alfred Harris, two of the petitioners, and Morris Green and Louis Tobias, respondents in this proceeding, were appointed executors and trustees. From that time down to the 18th day of February, 1886, there had been no difference between these trustees in regard to the administration of the estate, nor *152 in their personal relations to each other. The burden of the work had been borne by trustee, Russak, as he says, under the advice of his associate, Harris, but the two responding trustees, Green and Tobias, as is shown in the opposing papers, discharged all of the duties that were required of them, and were frequently consulted in regard to the transactions made necessary in the proper management of the estate.
On the 18th day of February, 1886, the trustees met for an accounting. Papers had been prepared for their signature by the attorneys selected by Mr. Russak, and the accounts were passed on that day, so far as they could be by agreement of the trustees. Among the papers signed was a release by the trustees of. commissions which were due them by law from the estate. On the next day Mr. Green, on consultation with his private counsel, was advised that such a settlement of the accounts was not proper, that it did not effect any useful purpose except as between the trustees themselves, and that the whole preceding was irregular, and advised him that there should be an accounting in the regular way before the surrogate.
The attorney was requested to look into the matter, and he found, among other things, that the commissions of the several trustees had been waived by them. Thereupon Messrs. Green and Tobias, claimed that their signatures; were placed upon the paper by inadvertence, and without fully understanding that it was a waiver of so great significance ; for the legal fees up to that time were not inconsiderable. That proceeding incensed the petitioners. Nevertheless, a proper accounting was had before the surrogate, and Mr McLean was appointed guardian ad litem of the infants who were interested in the estate, and the accounts were finally settled and allowed in the month of August following. As a part of the decree of the surrogate made under an agreement of the trustees for an adjustment of their commissions, was an award of one thou sand dollars to each of the three trustees, Louis Tobias,, Morris Green and Alfred Harris, while the sum of $10,-053.09 was awarded to trustee Russak, besides an allowance for costs. It was then adjudged by the surrogate “That the executors pay over said balance of the money and property of the said estate remaining in their hands to Louis Tobias, Benjamin Russak, Alfred Harris and Morris Green, to be held and retained by them as trustees, under and by virtue of the provisions of the last will and testament of said Henry Harris, deceased, for the -uses, and purposes,, and trusts imposed upon said Tobias, Benjamin Russak,. Alfred Harris and Morris Green, or the survivors or survi *153 vor of them, by the provisions of said last will and testament.”
In pursuance of the portion of the surrogate’s decree quoted above, Green and Tobias demanded of their associciates that the property should be placed in the names of the four trustees, and that the moneys should be deposited to the credit of all, and not to the credit, as theretofore, of two only of their number. As the case discloses the fact to be, the answer made to that proposition by the petitioners Eussak and Harris, was this summary application to the court for the removal from office of Green and Tobias.
An examination of the petition, answer, and affidavits, discloses no fact which would warrant the court thus summarily to interpose its power and authority. The fact is not to be lost sight of, that the appellants made no illegal claims for commissions.
It is difficult therefore, to see why proceedings should be-instituted against them, based solely upon acrimonious feelings of the two associates engendered by that act, and by the demand that the surrogate’s judgment be carried into effect.
Lest the position of the petitioners should be misapprehended, the following portion of their petition should'be considered, namely, “That the conduct of said Green and Tobias in neglecting to do anything in respect to the management of said estate for six years, and then claiming-commissions, has greatly incensed your petitioners against them, and has also created disagreements between said Green and Tobias, and the other executors Harris and Eussak, and will create great disturbance and annoyance in the administering of the estate of said Green and Tobias are permitted to act in the capacity of trustee.”
And again, in their affidavits replying to those used in opposition to their petition, they say: “That these affiants, are, and for several months past have been, greatly in-ceased and angered at the conduct of the said respondents and have refused, and still refuse to recognize said Green or Tobias, or to exchange a word with them, so great is the ill-feeling that has been engendered, and the affiants Benjamin Eussak and Alfred Harris say, on their own behalf, that so great is this ill-feeling that they refuse and decline to serve in this capacity as trustees if said Green and To-bias are to be continued in said office with them, for the-reason that they feel that from the conduct of said Green and Tobias and the desire to remain as trustees is simply in the hope of obtaining commissions without any regard to their duty as trustees.”
While hitherto the four trustees had acted harmoniously *154 together for six years, the petitioners suddenly, and without any cause whatever, took offense at the assertion of two of their associates of a proper and legal demand. The reason for removal of the appellants is not because of any misconduct on their part, but because they ventured to discharge the duties of their trust in a reasonable manner. They were chosen by the testator because they were his intimate friends in whom he had great confidence, both for their business ability and moral character. Mr. Tobias and the testator had been acquainted in Germany and in this country for upwards of fifty years at the time of the latter’s death. The will, when it was executed, was placed by the testator in the hands of Mr. Tobias for safe keeping, and the testator afterwards pass over to the same custodian the several codicils to the will, and the yearly balance sheets of the firm of Harris and Eussak, as his will declared his intention to do. The testator was associated in a large mercantile business with the petitioner Eussak. It is apparent, that knowing that a large part of his property was invested in their joint business, he, with no want of confidence in Mr. Eussak, desired that persons other than those who were members of that firm should have, in part, the management of his estate, for in a technically legal sense, the relations of Eussak as survivor of the firm of Harris & Eussak, were hostile to the estate of the deceased co-partner. The petitioner, Alfred Harris, was at that time a minor. It appears further that the amount of money which was realized to the estate from the interest of the deceased in the firm of Harris & Eussak was the sum of $112,400.63.
After the settlement of the survivor of the copartnership with the estate of the deceased, the pecuniary interest of the petitioners, Eussak and Alfred Harris, was of such character in its relation to the ultimate rights of the remainder-men, as to show the importance of having disinterested trustees present and active in duty to prevent loss, not necessarily by fraud, but through accident or carelessness.
Moreover, it is shown that the sum or $40,000 of the trust funds has been loaned to the present firm of Harris & Eussak, personally through the act of Eussak alone if it be true, as he says, that he had the sole charge and management of the business for six years past. This is an additional reason why the court should be careful to retain in the trusteeship disinterested parties, not because it distrusts the character and business ability of the other trustees, but because it must insist that in the management of an estate where the rights of infants are paramount, all the safeguards shall be put out to prevent loss of the trust property. *155 Indeed, it would be more in the line of prudence, if the petitioners, Russak & Harris, desire to retire from the management of the estate, to permit them to do so, rather than to make an order removing these two reputable and competent men from this important trust simply because they demanded and received lawful commissions, and because they asked that the four trustees carry out the just and proper decree made by the surrogate.
The gentleman who was appointed guardian ad litem to to take care of the rights of the infants in the surrogate’s court upon the accounting mentioned above makes an affidavit in these proceedings, in which he expresses the opinion that it would not be a judicious thing to remove trustees Tobias and Green from active participation in the trust. He further says that the examination which he gave to the affairs of the estate did not reveal any neglect or misconduct on the part of the executors, or show any instance of want of harmony or perfect accord among them.
The two persons named by the special term to take the place of Green and Tobias in the administration of the trust, while doubtless competent and proper to be trustees in the execution of trust estates generally, bear, as it is claimed, that relation to Russak & Harris, one of them being in the employment of the firm, and the other a relative of one of the parties, as to make them unsuitable in this particular instance.
The special term failed also to require of the new trustees a bond for the faithful discharge of their duties. The established rule of the court is to exact such bond, and it should not be departed from.
The order appealed from should be reversed, with ten dollars costs to each of the appellants, besides disbursements, and the motion denied.
Van Brunt, Oh. J, and Bartlett, J., concur.